# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CAROL BUTLER, | Case No. 2:17-CV-438 |
| Plaintiff, | |
| v. | JUDGE ALGENON L. MARBLEY |
| | Magistrate Judge Chelsey M. Vascura |
| MEMORIAL HEALTH SYSTEM MARIETTA MEMORIAL HOSPITAL, | |
| Defendant. | |

## OPINION & ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment. (ECF No. 16). For the reasons below, Defendant's Motion is **DENIED**.

## I.   BACKGROUND

Plaintiff Carol Butler worked for Defendant Marietta Hospital as a nurse before she resigned in October 2015. She has also opted into a Fair Labor Standards Act (FLSA) collective action against Defendant. *See Myers v. Marietta Memorial Health System*, 15-CV-2956. Plaintiff and others allege Defendants systematically deducted a thirty-minute lunch from the paychecks of their employees without regard to whether that lunch was actually taken.

In this case, however, Plaintiff alleges Defendant retaliated against her for bringing the *Myers* collective action by creating a hostile work environment and by interfering with a position she had agreed to with a travel nursing organization called Jackson Nursing ("Jackson"). Defendants argue that Plaintiff resigned and so cannot maintain an FLSA retaliation claim, and that the Hospital cannot be liable because it did not know of the *Myers* collective action nor of Plaintiff's plans to work for Jackson.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). Therefore, for purposes of Defendants' Motion, the Court will view the facts in the light most favorable to Plaintiffs.

### B. FLSA Retaliation Claim

The Fair Labor Standards Act makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted … any proceeding under or related to this chapter…." 29 U.S.C. § 215(a)(3). A plaintiff alleging retaliation under the FLSA may offer either direct or circumstantial evidence to support her case. In discrimination cases, "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). *See also Mansfield v. City of Murfreesboro*, 706 Fed. Appx. 231, 235 (6th Cir. 2017) (unpublished) (describing direct evidence in the context of FLSA claims). In most cases, the plaintiff "will be able to produce direct evidence that the decision-making officials knew of the plaintiff's protected activity…[b]ut direct evidence of such knowledge or awareness is not required…." *Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002). Instead, a plaintiff may instead present circumstantial evidence which tends to show an improper reason for her

dismissal. If the plaintiff is offering circumstantial evidence, the court engages in the familiar *McDonnell Douglas* burden-shifting analysis.

The Supreme Court established a burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the Sixth Circuit has applied that burden-shifting to FLSA retaliation claims. *Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2004). This familiar test has four parts. To establish a *prima facie* case of retaliation, an employee must prove: (1) she was engaged in a protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) she was the subject of an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *See Williams v. Gen. Motors Corp*., 187 F.3d 553, 568 (6th Cir. 1999). A *prima facie* showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff can establish such a case, the burden then shifts to the defendant to offer a legitimate, non-discriminatory – or, as here, non-retaliatory – reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer is able to do this, the burden shifts back to the plaintiff, who must now prove by a preponderance of the evidence that the proffered reasons were mere pretext and not the true reasons for the adverse action. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 883 (6th Cir. 1996). *See also Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

### C. Tortious Interference

Ohio recognizes both the torts of interference with a business relationship and interference with contract rights. These torts "generally occur when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator*

4

*Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 1995-Ohio-66. Although the two torts are similar, tortious interference with a business relationship "occurs when the result of the improper interference is not the breach of a contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff." *Franklin Tractor Sales v. New Holland North America, Inc.*, 106 Fed. Appx. 342, n.1 (6th Cir. 2004). *See also Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) (distinguishing between the elements of each tort). Plaintiff here has pleaded tortious interference with a business relationship.

## III.   ANALYSIS

### A. FLSA Retaliation Claim

Both parties present their arguments in the framework of the *McDonnell Douglas* burden-shifting analysis.

#### 1. *Protected Activity*

The first question is whether Plaintiff engaged in activity that is protected under the FLSA. Plaintiff did not join the underlying collective action *Myers* until after she resigned from employment with Defendant. Nevertheless, she still engaged in protected activity within the meaning of the FLSA. A complaint need not be reduced to writing and be filed with the Courts to constitute a complaint that puts an employer on notice. Even an informal complaint to a supervisor can constitute protected activity. In *E.E.O.C. v. Romero Community Schools*, the Sixth Circuit reversed a district court's finding as clearly erroneous when it concluded that a plaintiff must have instituted formal proceedings with the E.E.O.C to have undertaken protected activity. 976 F.2d 985, 989. Before the plaintiff "filed her charge" with the E.E.O.C., she "had complained to the school district of unlawful sex discrimination and had told them she believed they were 'breaking some sort of law' by paying her lower wages." *Id.* As a result, she had

5

engaged in protected activity and the District Court clearly erred by granting the defendants summary judgment. *Id.* It is the "assertion of statutory rights which is the triggering factor, not the filing of a formal complaint." *Id*.

Here, Plaintiff Butler engaged in protected activity when she raised with her supervisors the issue of the automatic lunch deduction, which her deposition testimony indicates she did multiple times during her employment. There is no genuine dispute as to this element.

2. *Employer Knew of the Activity*

The second part of the analysis is to determine whether Defendant knew of Plaintiff's participation in FLSA protected activity. In many cases, a plaintiff will have direct evidence of the decision-maker's knowledge, because, for example, that decision-maker was the supervisor to whom they had previously made complaints. But such direct evidence is not necessary, and "a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall*, 287 F.3d at 552. At least one district court inferred knowledge about a plaintiff's protected activity "from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Id*. at 553 (citing *Kralowec v. Prince George's County, Maryland*, 503 F. Supp. 985 (D. Md. 1980), *aff'd* 679 F.2d 883 (4th. Cir), *cert. denied* 459 US. 872 (1982). In *Kralowec*, the court concluded it was "highly improbable" that the two parties – the one to whom the plaintiff complained and the one who eventually dismissed the plaintiff – "would not have discussed the plaintiff's complaint as soon as" they learned of it. *Mulhall* at 553 (citing *Kralowec* at 1010).

Here, the record reflects that Plaintiff had raised with her supervisors concerns about the lunch deduction policy. *See, e.g.* ECF No. 29, Ex. 1 at 55:1-20; 58:11-13; 62:20-22. It would be reasonable to conclude from this record that a decision-maker knew of these actions by Plaintiff

6

when they engaged in what she terms "retaliation" and when they engaged in practices that created a hostile work environment. There remains uncertainty on the record about precisely which decision-makers knew which key facts, however, and as a result, there remains a genuine dispute of material fact on this element.

3. *Plaintiff Was the Subject of an Adverse Employment Action*

The Sixth Circuit, adopting a test from the Seventh Circuit, defines a "materially adverse" employment action as a

> change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (adopting these factors in the Title VII context); *see also Bowmann v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000) (same); *Pettit v. Steppingstone, Center for the Potentially Gifted*, 429 Fed. Appx. 524, 532 (6th Cir. 2011) (unpublished) (applying these factors to an FLSA claim).

In this case, Plaintiff testified about the difficult work environment, and about being reprimanded for clocking "no lunch" when she accurately recorded on her time sheet that she did not receive an uninterrupted thirty-minute lunch. *See e.g.* ECF No. 29, Ex. 1 at 59:22-60:2. And in her complaint, she alleges that in addition to the reprimands and difficult work environment she was also constructively discharged and retaliated against when Defendant prevented Jackson Nursing from hiring her.

Plaintiff has met her burden of demonstrating that she was subjected to a materially adverse employment action. To do so, she must "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have

7

dissuaded a reasonable worker from making or supporting a charge…" *Pettit*, 429 Fed. Appx. at 531-32. Plaintiff testified that after she complained to her supervisor about the automatic lunch deduction, she was reprimanded, and as discussed *infra,* §IIIB, she was unable to take a previously agreed-upon position with Jackson after she resigned. Her paperwork also included a recommendation against re-hiring her. A reasonable worker could view these actions by the employer as disincentives to challenge the automatic lunch deduction, and as a result, Plaintiff was subject to a materially adverse employment action.

### 4. *There Was a Causal Connection*

The fourth step of the analysis concerns whether there was a causal connection between the plaintiff's protected activity and the adverse employment action. A plaintiff can demonstrate a causal connection either through direct evidence or "through knowledge coupled with a closeness in time that creates an inference of causation." *Parnell v. West*, 1997 WL 271751 at *3 (6th Cir. 1997) (unpublished) (citing *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987). For the plaintiff to meet their burden, "temporal proximity, when coupled with other facts, may be sufficient in certain cases to establish the causal-connection prong…" *Mulhall*, 287 F.3d at 551. No single piece of circumstantial evidence is dispositive, but "evidence that the defendant treated the plaintiff differently from identically-situated employees or that adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999).

The question for courts has been how much proximity is required. The Sixth Circuit has reasoned that a "time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Parnell* at *3. However,

when the other supporting evidence has been compelling, this Circuit has found a temporal connection even when the time lapse was fifteen months. *Harrison v. Metropolitan Government of Nashville*, 80 F.3d 1107, 1999 (6th Cir. 1996).

In this case, Plaintiff spoke with her supervisor about the lunch deduction within one year of her resignation. Her resignation letter is dated September 2015. That same week, she was prevented from taking a position with Jackson. *Infra*, §IIIB. This is sufficient temporal proximity that there remains a genuine dispute of the material facts concerning the causal connection of Plaintiff's informal complaints and the circumstances of her resignation. Thus, Plaintiff has established a genuine issue of material fact with respect to all four prongs of her FLSA retaliation claim, and Defendant's Motion for Summary Judgment on this claim is denied.

### B. Tortious Interference

Plaintiff also alleges tortious interference with a business relationship. The record indicates there is a genuine dispute of material fact about whether Defendant interfered to prevent Plaintiff from entering into an employment contract with Jackson.

In order to maintain a claim for tortious interference with a business relationship, Plaintiff needs to show she had a business relationship in which the Defendant knowingly interfered; that as a result, Jackson refused to enter into the relationship; and that damages resulted. The primary element in dispute here is about Defendant's knowledge.

The record reflects that Plaintiff gave notice on September 18, 2015, her supervisor received notice of her resignation on September 21, 2015, and Plaintiff worked her last shift on October 3, 2015.[1] Plaintiff had been in discussion with Jackson about a position there. (ECF No.

---

[1] There is some dispute around the date of Plaintiff's notice. The Hospital's paperwork regarding Plaintiff's resignation seems to have September 18, 2015 (Friday) as the date she gave notice. (ECF No. 19, Ex. 3). Plaintiff testified that she gave two-week notice (ECF No. 29, Ex. 1 at 36:13) and that she worked her last shift on October 3, 2015 (Saturday). However, the notice was apparently stamped "received" as of September 21, 2015 (Monday) (ECF

9

29, Ex. 1 at 36:18-24, 37:1-8). Then Plaintiff received a call from Jackson in which she was told that Jackson could no longer hire her. (*Id*. at 37:8-24). Plaintiff explained in her deposition that she spoke with Lynnett Myers, her co-worker, after receiving the call from Jackson because Myers had received a similar call at the same time. (*Id.* at 44:13-15). Plaintiff also received exit paperwork from Marietta that said she had received "multiple patient complaints over the past few weeks regarding attitude and poor patient care," had "resigned to work for Jackson travel agency", and ultimately recommended against re-hire. (ECF No. 19, Ex. 3). Defendant is the county's largest employer.[2] The exit paperwork is dated September 25, 2015. Plaintiff testified that she did not tell anyone at the Hospital that she was going to work for Jackson, nor had she been told of complaints about her during her time employed there. (ECF No. 29, Ex. 1 at 42:14-20; 43:11-17).

These facts taken together indicate a genuine dispute of material fact. Most essential to the tortious interference claim is the genuine dispute about who at Marietta knew of the nurses's departure for Jackson, and when. That a non-solicitation agreement – which apparently applied retroactively – seems to have been concluded contemporaneously with the nurses giving their notice gives rise to a genuine dispute of material fact. In addition, the reference to Jackson on Plaintiff's termination paperwork – information Plaintiff says she did not disclose – would allow a reasonable jury to conclude Defendants did tortiously interfere with a business relationship. Because there is a genuine dispute of material fact, summary judgment would be inappropriate at this time.

---

No. 29, Ex. 1 at 40:17). Nevertheless, during Plaintiff's deposition, the parties seem to agree that the letter is dated September 19, 2015. (ECF No. 29, Ex. 1 at 40:21-24).
[2] Q: And now Marietta Memorial Hospital is the largest employer in the county, correct?
A: Correct. (ECF No. 18, Ex. 5 at 101:23-102:1).

## IV.     CONCLUSION

For the foregoing reasons, there remains a genuine dispute of material fact such that summary judgment would be inappropriate at this time. Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**


            ___s/Algenon L. Marbley_____
            **ALGENON L. MARBLEY**
            **UNITED STATES DISTRICT JUDGE**

**DATED:  March 18, 2019**